UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

JOSUE ROMERO, on behalf of himself and all others similarly situated,

                      Plaintiffs,

    v.

88 ACRES FOODS, INC.,

                      Defendant.
--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  1/18/2022

20-CV-9215 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

      Josue Romero ("Plaintiff"), a visually impaired person, brings this action on behalf of himself and others similarly situated against 88 Acres Foods, Inc. ("Defendant") for violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, ("ADA") and related state law claims.  Plaintiff alleges that Defendant failed to design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other visually-impaired people, thereby violating Plaintiff's rights under the ADA.  Defendant moves to dismiss the Complaint for lack of personal jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(2) and (6).

      For the reasons set forth below, Defendant's motion is DENIED in its entirety.

## BACKGROUND

      Plaintiff Josue Romero, a domiciliary of New York State, is visually impaired and thus requires screen-reading software to read website content using his computer.  (Compl. ¶ 2, ECF No. 1.)  The Complaint uses the term "visually impaired" to refer to all people who have a visual

acuity with correction of less than or equal to 20 x 200.  (*Id.*)

Defendant 88 Acres Foods, Inc., a domiciliary of Delaware with its principal place of business in Massachusetts, is a seed-based food company that owns and operates www.88acres.com (the "Website"), which offers goods and services for online sale and delivery to the public.  (*Id.* ¶ 20.)  Plaintiff alleges that Defendant sells and distributes its products throughout the United States, including in New York.  (*Id.* ¶ 21.)

The Complaint alleges that on several occasions, the last of which occurred in October 2020, Plaintiff visited Defendant's Website to make a purchase but was denied access equal to that of sighted individuals due to several accessibility barriers.  (*Id.* ¶¶ 25–26.)  One barrier is the lack of alternative text ("alt-text"), which is an invisible code embedded beneath a graphical image on a website.  Without alt-text, screen-reading software cannot vocalize a description of the graphic where a sighted user can see the graphic.  (*Id.*)  Several other barriers involve broken links.  The Website has links that are improperly labeled, including the link for the subscription price.  (*Id.* ¶ 31(c)).  Without a label, screen-reading software is unable to properly interpret the link.  (*Id.* ¶¶ 28–31.)  There are also links that do not contain any text, redundant links, and linked images that lack alt-text.  (*Id.* ¶¶ 28–30.)  Plaintiff alleges that because these features are lacking, the Website is inaccessible to visually impaired customers, including Plaintiff, who need to use screen-reading software.  (*Id.* ¶ 32.)

Plaintiff filed this action on November 3, 2020, bringing four claims on behalf of himself and all others similarly situated.  (*Id.*)  Plaintiff brings these claims pursuant to the ADA; the New York State Human Rights Law ("NYSHRL"); the New York State Civil Rights Law ("NYSCRL"); and the New York City Human Rights Law ("NYCHRL").  (*Id.* ¶¶ 58, 68, 81, 91, 93.)  Plaintiff also seeks a declaration that Defendant failed to comply with applicable laws

including, but not limited to, the ADA, the NYSHRL, and the NYCHRL.  (*Id.* ¶ 101.)

## DISCUSSION

Defendant moves to dismiss the Complaint for lack of personal jurisdiction and failure to state a claim.  (Def. Mem. at 1.)  The Court denies Defendant's motion because Plaintiff has properly pleaded personal jurisdiction pursuant to N.Y. C.P.L.R. § 302(a)(1), and Plaintiff has properly pleaded facts alleging that the Website is a place of "public accommodation" within the meaning of the ADA.  The Court first addresses personal jurisdiction and then turns to failure to state a claim.

### I. Personal Jurisdiction

#### a. Legal Standard

"A court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question" and must dismiss the action against any defendant over whom it lacks personal jurisdiction.  *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 148 (E.D.N.Y. 2017) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)); *see* Fed. R. Civ. P. 12(b)(2).

Plaintiff bears the burden of establishing the Court's jurisdiction over defendants.  *See Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566–67 (2d Cir. 1996).  Prior to discovery, a "plaintiff[ ] need only make a prima facie showing of personal jurisdiction over the defendant."  *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 126 (2d Cir. 2008).  "Where a court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials."  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)

(quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)) (alteration in original).

In evaluating whether plaintiffs have made a prima facie showing, courts "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Porina*, 521 F.3d at 126. "Because a motion to dismiss pursuant to Rule 12(b)(2) based on lack of personal jurisdiction is 'inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion.'" *St. Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co.*, No. 96-CV-7269, 1997 WL 357989, at *1 (S.D.N.Y. June 26, 1997) (Mukasey, J.) (quoting *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995) (Wood, J.))

### b. Jurisdiction is Proper Under N.Y. C.P.L.R. § 302(a)(1)

To determine the existence of personal jurisdiction over a non-domiciliary, the Court engages in a two-part analysis. First, the Court determines whether there is jurisdiction over the defendant pursuant to the relevant forum state's laws. *Bank Brussels Lambert*, 171 F.3d at 784. Second, the Court determines whether an exercise of jurisdiction is consistent with the Due Process Clause. *Id.* (citing *Metro. Life Ins. Co.*, 84 F.3d at 567). Plaintiff contends that the Court has personal jurisdiction based on § 302(a)(1) of the New York long-arm statute. N.Y. C.P.L.R. § 302(a)(1).

Pursuant to N.Y. C.P.L.R. § 302(a)(1), a court in New York may exercise personal jurisdiction over a non-domiciliary if (1) the defendant "transacts any business within the state"; and (2) the "cause of action aris[es] from" that business transaction. N.Y. C.P.L.R. § 302(a)(1); *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103

4

(2d Cir. 2006).

### i. Transacting Business

A nonresident "transacts business" in New York when she "purposefully avails [her]self of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246–47 (2d Cir. 2007) (quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967)). A cause of action arises from such business transaction when there is "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998) (internal quotation marks omitted); *see also Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988) ("[Section 302(a)(1)] is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.") (collecting cases).

When considering whether to exercise personal jurisdiction over a defendant because of his or her activities via a website, the Second Circuit directs district courts to look to the degree of interactivity and commercial nature of the site. *See Best Van Lines*, 490 F.3d at 252 ("We think that a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant 'transacts any business' in New York."). Fully interactive websites, over which a seller knowingly transmits goods or services to users, are sufficient to confer personal jurisdiction pursuant to New York's long-arm statute. *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418–19 (S.D.N.Y. 2009) (Stein, J.). The mere existence of an interactive website that is

accessible in New York, however, is not sufficient to exercise personal jurisdiction. Personal jurisdiction can be exercised only if Defendant used the Website to "purposely avail" itself of the forum state. *See Savage Universal Corp. v. Grazier Constr., Inc.*, No. 04 CIV. 1089(GEL), 2004 WL 1824102, at *8–9 (S.D.N.Y. Aug. 13, 2004) (Lynch, J.).

Accepting Plaintiff's allegations as true, the Court concludes that the "transacting business" prong of the New York long-arm statute is met. Defendant transacts business in New York through its Website and ensures the delivery in New York of the goods sold. (Compl. ¶ 20.) The 88 Acres Website is thus fully interactive and is used to effect commercial transactions with customers in New York. This purposeful availment of the New York market is sufficient to meet the 'transacting business' prong for personal jurisdiction pursuant to New York's long-arm statute. *See Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 363 (S.D.N.Y. 2020) (Liman, J.).

### ii. Arising Out of an Action that Occurred in New York

A cause of action arises from a business transaction when there is "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998) (internal quotation marks and citations omitted); *see also Grand v. Schwarz*, No. 15-CV-8779 (KMW), 2016 WL 2733133, at *3 (S.D.N.Y. May 10, 2016) (Wood, J.). Plaintiff alleges that Defendant purposefully availed itself of New York by selling products through its Website to New York consumers, but that it made its products available only to those who are sighted and could navigate the Website without assistive technology. (Compl. ¶ 32); *see Guglielmo v. JEGS Auto., Inc.*, No. 20-CV-5376 (LJL), 2021 WL 1026168, at *5 (S.D.N.Y. Mar. 17, 2021) (Liman, J.) (finding that a plaintiff could be harmed by a defendant transacting business only with sighted customers). Plaintiff visited Defendant's Website, but was denied access to portions of the Website through

which commercial activity took place because of the alleged access barriers. (Compl. ¶¶ 24–25.) This allegedly discriminatory conduct, transacting with sighted individuals but not with visually impaired individuals, is what forms the basis of Plaintiff's claims against Defendant. Defendant's transactions thus have a substantial relationship with the claim asserted—that Defendant's website is accessible to sighted customers but inaccessible to visually impaired customers. (Compl. ¶¶ 19, 27, 33.) Therefore, the court may exercise personal jurisdiction pursuant to section 302(a)(1) of the New York long-arm statute.

### c. Jurisdiction is Consistent with the Due Process Clause

If a state's long-arm statute permits personal jurisdiction, a court must analyze whether the exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution. As an initial matter, although section 302(a)(1) of New York's long-arm statute and constitutional due process are not coextensive, the Second Circuit has noted that it would be a "rare" case where personal jurisdiction is proper pursuant to New York's long-arm but not pursuant to a due process analysis. *Eades* v. *Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015). To establish personal jurisdiction, the Due Process Clause requires a plaintiff to allege (i) that a defendant has minimum contacts with the forum, and (ii) that the exercise of jurisdiction is reasonable in the circumstances. *Id.* at 168–69 (internal citation omitted). For purposes of the Due Process inquiry, a distinction is made between "specific" and "general" jurisdiction. The exercise of specific jurisdiction is permissible when a suit arises out of the defendant's minimum contacts with the forum. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A court may assert general jurisdiction when a defendant is "at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). To be found to have minimum contacts in a forum, a company need have only purposely availed itself of the

privilege of doing business in the forum, and have been able to foresee being haled into court there. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013). Here, the Court has already found sufficient Plaintiff's allegations that Defendant purposefully availed itself of New York as a forum. *See supra* pp. 5–6. Thus, Defendant has the requisite minimum contacts with New York.

When a defendant has the requisite minimum contacts with the forum state, it may still defeat jurisdiction on due process grounds if it can present a compelling case that jurisdiction would be unreasonable. *Licci*, 732 F.3d at 173. These considerations include

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). Defendant, located in Massachusetts, can easily defend itself in New York; New York has a "manifest interest" in providing means of redress for its residents, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 483 (1985); and Plaintiff has an interest in adjudicating his case where he resides. The final two factors are neutral. Defendant has not made a compelling case that jurisdiction would be unreasonable. Consequently, the Court holds that asserting jurisdiction over Defendant comports with "traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945), such that it satisfies the reasonableness inquiry of the Due Process Clause.

Plaintiff has satisfied its burden to show that this Court has personal jurisdiction over Defendant.

## II. Whether the Complaint States a Claim

### a. Legal Standard

In reviewing a motion to dismiss for failure to state a claim, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive a motion to dismiss, a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the supporting factual allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### b. The Complaint States a Claim Against 88 Acres

Defendant contends that Plaintiff has failed to allege that the Website is a place of "public accommodation," and hence that the ADA does not apply to it. Whether a website is a place of "public accommodation" subject to ADA protection has not been decided by the Second Circuit. The most closely analogous decision, *Pallozzi v. Allstate Life Insurance Co.*, held that Title III of the ADA applies to insurance underwriting practices. 198 F.3d 28, 31 (2d Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392 (2d Cir. 2000) ("*Pallozzi*"). The court started with the text of Title III,[1] and noted that the statute named an "insurance office" as a "public accommodation," and that the statute bars a "place of public accommodation" from

---

[1] The court stated that because it based its holding on the statutory text, it "need not consider . . . arguments that the ADA's legislative history and the interpretive guidelines" issued by the Department of Justice "confirm [its] interpretation." *Pallozzi*, 198 F.3d at 33.

9

"discriminat[ing] against [an individual] on the basis of disability in the full and equal enjoyment of [its] *goods* [and] *services*." *Id.* (quoting 42 U.S.C. §§ 12181(7)(F), 12182(a)) (alterations and emphases in original). The court held that the most obvious "goods" and "services" provided by an "insurance office" are insurance policies, and that the prohibition against discrimination extends to insurance policies, regardless of where the underwriting for that policy takes place. *Id.*

### i. Decisions from Other Circuits

The Circuit Courts of Appeals that *have* decided whether a website is a place of "public accommodation" have reached differing results.

Courts in the Third, Sixth, and Ninth Circuits have held that websites are not places of "public accommodation," reasoning that the unambiguous language of the statute includes only goods and services provided at physical, brick-and-mortar establishments. *See Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) ("The plain meaning of Title III is that a public accommodation is a place . . . . This is in keeping with the host of examples of public accommodations provided by the ADA, all of which refer to places."); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010–11 (6th Cir. 1997) (en banc) ("As is evident by § 12187(7) [sic], a public accommodation is a physical place and this Court has previously so held."); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) ("Title III provides an extensive list of 'public accommodations' in § 12181(7) . . . . All the items on this list, however, have something in common. They are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services . . . . [T]his context suggests that some connection between the good or service complained of and an actual physical

place is required.").

Courts in the First and Seventh Circuits, however, have held that the ADA is not limited to physical places of "public accommodation." In *Carparts*, the First Circuit reasoned that because Congress included "travel services" in Title III's list of covered entities, and because many travel services do not require customers to enter an office to obtain their services, Congress "clearly contemplated" that the ADA would apply to service providers that "do not require a person to physically enter an actual physical structure." *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994) ("*Carparts*"). Relying on *Carparts*, the Seventh Circuit concluded that Title III "plainly enough" applies to a facility "whether in physical space or in electronic space" that is open to the public. *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999); *see also, e.g.*, *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001) ("The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services. What matters is that the good or service be offered to the public.").

### ii. Decisions from District Courts in the Second Circuit

District judges in the Second Circuit have reached opposite conclusions as to whether Title III applies to websites. Judges who have held that Title III applies to websites that offer goods and services have relied upon *Pallozzi* in holding that the goods and services covered by the ADA are not limited to those sold at a physical location. *See Pallozzi*, 198 F.3d at 33; *Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077 (JPO), 2019 WL 6916098, at *2 (S.D.N.Y. Dec. 19, 2019) (Oetken, J.). In *National Federation of the Blind v. Scribd Inc.*, the court held that Title III applies to websites with or without physical premises, and therefore the ADA applied to a digital library subscription service that was accessible only via its website. 97

F. Supp. 3d 565, 570, 576 (D. Vt. 2015).  In *Andrews v. Blick Art Materials, LLC*, Judge Weinstein held that there need not be a link between a "place" and the goods and services being offered in order to find that Title III applies to those goods and services.  268 F. Supp. 3d 381, 393 (E.D.N.Y. 2017). Last, in *Del-Orden v. Bonobos, Inc.*, Judge Engelmayer conducted a comprehensive review of the caselaw, and "join[ed] the growing number of courts to hold that commercial websites qualify as 'public accommodations' within the meaning of the ADA, such that the ADA's protections extend to blind persons who claim discriminatory access to such websites."  No. 17 CIV. 2744(PAE), 2017 WL 6547902, at *1 (S.D.N.Y. Dec. 20, 2017) (Engelmayer, J.).

      Other district judges have held that websites can be places of "public accommodation" only when the website serves as an adjunct to a brick-and-mortar business.  In *Winegard v. Newsday LLC*, the court reasoned that the text of Title III refers to physical places, and thus that the "ADA's definition of 'public accommodation' . . . does not include stand-alone websites."  No. 19-CV-04420(EK)(RER), 2021 WL 3617522, at *3, 6 (E.D.N.Y. Aug. 16, 2021) ("*Winegard*"); *see also Martinez v. Mylife.com, Inc.*, No. 21-cv-4779 (BMC), 2021 WL 5052745, at *2 (E.D.N.Y. Nov. 1, 2021) (noting that the plain text of Title III "contemplates inclusion of only businesses with a physical location").  The court in *Winegard* rejected the notion that *Pallozzi* compels holding that Title III applies to stand-alone websites.  *Winegard*, 2021 WL 3617522, at *7–8.  Instead, the court held that *Pallozzi* stands for the proposition that a physical place is a condition precedent to the applicability of Title III of the ADA.  *Id.* at *7.  If a website offers "the same 'goods and services' as the business's brick-and-mortar operation,"

*Winegard* held, then that website falls within the scope of the ADA. *Id.*

For the following reasons, this Court does not find *Winegard*'s reasoning compelling.

### iii. This Court's Interpretation

This Court holds that websites qualify as places of "public accommodation," albeit electronic ones, and, as such, are required to provide equal services to visually impaired and sighted people.

Whether Title III applies to websites is a matter of statutory construction. "Statutory construction . . . is a holistic endeavor." *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002) (quoting *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)). When interpreting statutes, courts read statutory terms in light of the surrounding language and framework of the statute. *Id.* As with any exercise in statutory construction, the court begins with the text of the statute and, if the text is ambiguous, draws inferences about its meaning from its composition and structure. *United States v. Gray*, 642 F.3d 371, 377 (2d Cir. 2011). If the statutory language is unambiguous, the plain meaning of the statute controls its interpretation. *Canada Life Assurance Co. v. Converium Rückversicherung (Deutschland) AG*, 335 F.3d 52, 57 (2d Cir. 2003). Where the language is ambiguous, however, courts may use canons of statutory interpretation and the statute's legislative history to resolve the ambiguity. *Id.*

Looking first to the text of Title III, the Court concludes that the language is ambiguous. Section 12181(7) lists several types of entities that, so long as they affect commerce, are places of "public accommodation." 42 U.S.C. § 12181(7). The section is silent as to websites. This is not surprising, given that the ADA was enacted in 1990, and thus predates the ubiquity of today's e-commerce. Given the statute's ambiguity, the Court may look to the statute's purpose,

legislative history, and context for guidance.

Interpreting the term place of "public accommodation" in light of the surrounding language supports holding that a website is a place of "public accommodation." As the First and Seventh Circuits have noted, although the list of "public accommodations" in section 12181(7) lists many physical places such as "restaurants," "hotels," and "gymnasiums," it also includes a service not limited to a physical place, "travel service." *Id.*; *Carparts*, 37 F.3d at 19. Congress could not have intended that only those who enter an office to use a travel service are protected by the ADA, but that those who purchase the same service over the telephone are not protected. *Carparts*, 37 F.3d at 19; *see Frank G. v. Board of Educ.*, 459 F.3d 356, 368 (2d Cir. 2006) ("[W]here a statute is ambiguous, it 'should be interpreted in a way that avoids absurd results.'" (citation omitted)). By including "travel service" in the list of "public accommodations," Congress allowed the statute to apply to places other than physical entities.

Additional surrounding language in the statute provides support for this conclusion. Under the same provision, the statute lists "baker[ies], grocery store[s], clothing store[s] . . . *or other sales or rental establishment[s]*." 42 U.S.C. § 12181(7)(E) (emphasis added). Although items in this list could be interpreted to be limited to brick-and-mortar locations, that interpretation would lead to the absurd result that people with disabilities are protected if they shop in-store at Whole Foods, but not if they shop online at Whole Foods. The catch-all clause at the end of this list, when read in context of the accompanying words, should be interpreted not to be limited to brick-and-mortar locations. *See Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 372 (2003) ("[U]nder the established interpretative canons of *noscitur a sociis* and *ejusdem generis*, where general words follow specific words in a statutory enumeration, the general words are construed to embrace only

objects similar to those enumerated by the specific words.").

The ADA's legislative history also supports interpreting the statute to apply to websites. In passing the ADA, Congress expressed the view that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life." H.R. Rep. No. 101-485, pt. 2, at 50 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 303, 332. Congress expected the statute to adapt as technology evolved. *Id.* at 108, *as reprinted in* 1990 U.S.C.C.A.N. at 391 ("[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times."). Today, a large volume of interstate commerce is transacted through websites.

For these reasons, the Court concludes that the term "public accommodation" in Title III of the ADA encompasses private commercial websites that affect commerce with or without a nexus to a physical place.

## CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss is DENIED in its entirety. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 7. The parties are directed to submit a proposed Civil Case Management Plan and Scheduling Order by February 4, 2022.

    SO ORDERED.

Dated:  New York, New York
         January 18, 2022

                                              */s/ Kimba M. Wood*
                                              KIMBA M. WOOD
                                       United States District Judge